UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHAKEEMA GILL,
    *Plaintiff*,

v.

TEVA RESPIRATORY, LLC, *et al.*
    *Defendants*.

No. 3:16-cv-00299 (JAM)

**RULING GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Shakeema Gill uses an inhaler for her asthma. One day while using the inhaler she breathed in a thumbtack that had somehow become lodged inside her inhaler. She has filed this product liability lawsuit against both the manufacturer of the inhaler (defendant Teva Respiratory, LLC) and the retailer (defendant CVS Pharmacy, Inc.). Because no genuine issue of fact remains to show that the thumbtack could have entered plaintiff's inhaler at any time that it was within the possession or control of either of the defendants, I will grant defendants' motions for summary judgment.

## BACKGROUND

On January 28, 2014, plaintiff purchased a ProAir HFA inhaler for her asthma from a CVS pharmacy in Ansonia, Connecticut. The inhaler was assembled and packaged by Teva Respiratory, LLC, in Ireland.

According to plaintiff's deposition, she put the new inhaler into the glove compartment of her car. About one week later, on February 6, 2014, she retrieved the inhaler from the glove compartment, at which time it was still in its original packaging and had not been opened or used. She removed the cap and shook the inhaler and then tried to spray it into her mouth. She

1

felt that medication had not entered into her lungs, so she shook and sprayed the inhaler a couple of times. On the final spray, she aspirated what turned out to be a thumbtack that had been inside the inhaler. Several days later, plaintiff sought medical treatment at the Griffin Hospital, and a surgeon at Yale New Haven Hospital eventually removed the thumbtack from plaintiff's lungs.

Although defendants do not dispute that plaintiff aspirated a thumbtack from within her inhaler, both defendants dispute that the thumbtack could have been introduced into the inhaler while it was under their possession or control. Teva has introduced evidence about its manufacturing and inspection process to preclude any inference that it could have allowed the thumbtack to enter the inhaler. According to Teva's properly supported statement of material facts, "The manufacturing, quality control, and quality assurance processes and procedures for the production of ProAir HFA inhalers in 2013 were such that a push pin like the one inhaled by Ms. Gill could not have been in the mouthpiece of (or any other part of) a ProAir HFA inhaler, including a product in lot DAA69A, at the time it left Teva Respiratory's control." Doc. #45 at 2.

Similarly, CVS in turn relies on plaintiff's admission that the inhaler was still in its original packaging just before she used it, a contention that is inconsistent with any tampering by CVS with the inhaler during the time that it was in CVS's control. For her part, plaintiff did not conduct any discovery, and she has neither disputed defendants' evidence nor even submitted a statement of material facts as required under the Court's local rules. Accordingly, the Court deems the factual statements as set forth in defendants' local rule statements to be true. *See* D. Conn. L. Civ. R. 56(a)(1).

Beyond defendants' evidence that negates their responsibility for the thumbtack having entered the inhaler while in their possession or control, defendants also point to evidence that quite devastatingly contradicts plaintiff's own account of what happened before she breathed in

the thumbtack. Several notes in the medical records recount plaintiff's statements to medical personnel that the inhaler had been in her purse (not her glove compartment), that the cap had fallen off, and that her children had put the thumbtack inside the inhaler. For example, the medical records notes from Griffin Hospital state in part that "4 days ago while using inhaler p[atien]t thinks she aspirated 'something' which had gotten into her inhaler mouthpiece [illegible] the cap fell off in her purse." Doc. #45-7 at 2. Similarly, the notes from Yale New Haven Hospital (where plaintiff later had the thumbtack removed) state that plaintiff "aspirated pushpin when using inhaler from purse." *Id.* at 4. The surgeon "advised [plaintiff] to keep inhaler separate from other belong[ing]s." *Id.* at 7. A later follow-up note from Griffin Hospital recites plaintiff's statement that "her children had put the thumbtack in her albuterol inh[aler] and she didn't see it before she used her inhaler." *Id.* at 3. When plaintiff was deposed in connection with this lawsuit, she had no explanation for these statements as reported in her medical records.

Teva also introduced evidence that every inhaler that left its plant had a mechanical counter that was set to a level of 200 doses and that counted down each time that the inhaler was used. At plaintiff's deposition, she was asked to produce the inhaler. She did so and testified that she had not used the inhaler again since the day that she had aspirated the thumbtack. Yet the inhaler as produced by plaintiff showed a count of 166, reflecting that the inhaler had been used 34 times. When asked whether this meant that she had used the inhaler on occasions before she had breathed in the thumbtack, plaintiff responded: "You would have to ask somebody else because I never used it before. So—and I didn't look at the number beforehand, so that is not something I did before this." Doc. #28-6 at 7.

> Q. So you would have no idea how the number went down from 200 to 166?
> A. Same thing I don't know how the thumbtack got in there.

3

> Q. I am not sure I understand what you mean by that answer.
>
> A. I don't know how the thumbtack got in there. So the same reason it got in there would have been the same reason the numbers were down.

Doc. #28-6 at 7.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. A court's role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

Here, plaintiff has failed to rebut evidence from defendants that they could not have been responsible for the thumbtack entering the inhaler while it was in their possession or control. When a defendant moves for summary judgment and introduces supporting evidence, a plaintiff may no longer rest on the bare allegations of the complaint but must introduce affirmative evidence to suggest that a genuine fact issue still remains in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Although plaintiff relies on her own account of the inhaler while in her possession, she does nothing to contradict defendants' evidence with respect to the handling of the inhaler while in their possession and control.

Moreover, in rare circumstances a court must necessarily undertake some evaluation of a plaintiff's credibility at the summary judgment stage. The Second Circuit has held that "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' ... and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." *Rojas v. Roman Catholic Dioceses of Rochester*, 660 F.3d 98, 105 (2d Cir. 2011) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)).

As the Second Circuit has cautioned, "we do not suggest that district courts should routinely engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment," and "if there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete." *Id.* at 106 (quoting *Jeffreys*, 426 F.3d at 555 n.2). Still, there may be "certain extraordinary cases, where 'the facts alleged are so contradictory that doubt is cast upon their plausibility, [for which] the court may pierce the veil of the complaint's factual allegations and dismiss the claim.'" *Ibid.* (quoting *Jeffreys*, 426 F.3d at 555).

An exception is made for these kinds of extraordinary cases, because "[t]o hold otherwise, and require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings … would license the mendacious to seek windfalls in the litigation lottery." *Ibid.* (citation and internal quotation marks omitted). Accordingly, "where, as here, the relevant contradiction is not only unequivocal but is left unexplained— indeed, is inexplicable—a district court may determine that a plaintiff has manufactured a sham

issue of fact" that may not stand in the way of a defendant's motion for summary judgment. *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013).

This is the type of rare and extraordinary case that warrants a rejection of plaintiff's account. It is not simply that plaintiff has failed to rebut defendants' evidence that the thumbtack could not have been introduced into the inhaler at any point during the manufacturing, distribution, or retail sales process. It is that plaintiff's own account of the facts—which is the only evidence relied on by plaintiff to sustain her claim—is rife with irreconcilable contradiction. Plaintiff has no explanation for the multiple medical notes from both Griffin Hospital and Yale New Haven Hospital reflecting that the inhaler was in her purse with the cap off and accessible to her children, rather than in its original packaging in her glove compartment as plaintiff claimed. Nor does plaintiff have any explanation for why the inhaler's dosage count reflected its prior use 34 times, rather than her initial use of a new inhaler as plaintiff self-servingly claimed.

In the face of defendants' evidence as well as the manifest contradictions and discrepancies in plaintiff's own account, no reasonable jury could conclude that the thumbtack entered the inhaler at any time that the inhaler was in the possession or control of either one of the defendants. Indeed, plaintiff herself repeatedly admitted at her deposition that "I don't know how the thumbtack got in there." Doc #28-6 at 7. Because plaintiff herself disavows knowing how the thumbtack came to be inside her inhaler, she is in no position to claim or to prove at trial that defendants are responsible or liable.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment (Doc. #43 and Doc. #46) are GRANTED. The Clerk of Court shall close this case.

6

It is so ordered.

Dated at New Haven this 27th day of December 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge